# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JOREL SHOPHAR,

                **Plaintiff,**

v.

CITY OF OLATHE, et al.,

                **Defendants.**

Case No. 15-CV-4961-DDC-KGS

## MEMORANDUM AND ORDER

This lawsuit arises from a child custody dispute between plaintiff Jorel Shophar and a non-party, Krissy Gorski, the mother of two of plaintiff's children. Plaintiff alleges that Ms. Gorski—hoping to terminate plaintiff's parental rights and extort money from others—has "contrived a false campaign of abuse against" him. Doc. 70 at 1. Plaintiff brings this lawsuit pro se against five defendants whom he accuses of helping Ms. Gorski contrive her false abuse claims and her attempts to terminate plaintiff's parental rights. The five named defendants are: (1) the City of Olathe ("Olathe"); (2) Safehome, Inc.; (3) The Layne Project, Inc.; (4) KVC Kansas; and (5) Ashlyn Yarnell.

All five defendants previously moved to dismiss plaintiff's Complaint under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and Fed. R. Civ. P. 12(b)(6) for failing to state a claim for relief. At the same time, plaintiff asked the court for leave to file an Amended Complaint. Several defendants opposed plaintiff's Motion for Leave, arguing that plaintiff's proposed amendments were futile. In a September 13, 2016 Memorandum and Order, the court agreed with defendants, finding plaintiff's proposed Amended Complaint was futile because it still failed to state viable claims against some of the defendants. Doc. 65 at 13. Nevertheless,

the court granted plaintiff leave to file an Amended Complaint. *Id.* But, the court cautioned plaintiff: "[T]he court allows plaintiff one final opportunity to file an Amended Complaint—one that addresses all of the concerns raised by the court in this Order. Specifically, plaintiff must plead *facts*—and not just conclusions—to state plausible claims and cure the deficiencies identified [in the court's Order]." *Id.*

On October 12, 2016, plaintiff filed his Amended Complaint. Doc. 70. Like plaintiff's original Complaint, the Amended Complaint is difficult to understand. But, plaintiff appears to allege, generally, that defendants discriminated against him and violated his constitutional rights. Plaintiff asserts his amended claims under 42 U.S.C. §§ 1983 & 1985, 18 U.S.C. § 1028, and Kan. Stat. Ann. §§ 38-141 & 38-223(e).

All five defendants have filed Motions to Dismiss the Amended Complaint invoking Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Docs. 77, 79, 84, 86, 88. Plaintiff has responded to all five motions. Docs. 90, 91, 92, 97, 101. And, defendants have submitted Replies. Docs. 93, 94, 95, 99, 102. After considering the parties' arguments, the court grants defendants' motions to dismiss because either the court lacks subject matter jurisdiction over plaintiff's claims or plaintiff's claims fail to state plausible claims for relief. The court explains the reasons for its rulings below.

## I.     Factual Background

The following facts are taken from plaintiff's Amended Complaint (Doc. 70), accepted as true, and viewed in the light most favorable to plaintiff.[1] Plaintiff and a woman named Krissy

---

[1]     *ASARCO LLC v. Union Pac. R.R. Co.*, 755 F.3d 1183, 1188 (10th Cir. 2014) (explaining that, on a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the court must "accept as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to the [plaintiff]." (citation and internal quotation marks omitted)). The court also construes plaintiff's allegations liberally because he proceeds pro se. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (explaining that courts must construe pro se filings liberally and hold them to a less stringent standard than formal pleadings drafted

Gorski had two children together. Plaintiff accuses Ms. Gorski of abusing pain killer medication starting in 2015. Plaintiff alleges that Ms. Gorski's drug abuse has caused her to behave erratically and harm their children. On August 8, 2015, plaintiff says he "made plans to file for paternity" of the two children. Doc. 70 at 1. But, on August 12, 2015, Ms. Gorski took the children away from plaintiff. Ms. Gorski also reported that plaintiff was abusing her and the children physically to various agencies, including the Olathe Police Department, the Johnson County District Court, the Department for Children and Families ("DCF"), and Safehome. Plaintiff asserts that Ms. Gorski's abuse claims are false.

On August 12, 2015, plaintiff contacted the Olathe Police Department to report that his children were missing and that Ms. Gorski was abusing pain killers. Plaintiff spoke to an officer who reported that Ms. Gorski already had contacted the Olathe Police Department to make an abuse complaint against plaintiff. The officer told plaintiff that he could do nothing for plaintiff. Later that day, a friend of Ms. Gorski's came to plaintiff's home seeking Ms. Gorski's pain killer medication. When plaintiff's wife refused to give the friend the pain killers, the friend called the Olathe Police Department. An officer arrived at the home and demanded that Ms. Shophar provide the medication, even though both plaintiff and Ms. Shophar told the officer that Ms. Gorski was abusing the medication as well as her children.

Plaintiff alleges that the Olathe Police Department refused to tell him where his children were located, prohibited him from filing a police report against Ms. Gorski, ignored his complaints about Ms. Gorski's drug abuse and child endangerment, and improperly investigated Ms. Gorski's false abuse allegations against him. Plaintiff alleges that the Olathe Police

---

by lawyers). But, when applying this standard, the court does not become the pro se litigant's advocate. *Id.* Also, a litigant's pro se status does not excuse him from complying with the court's rules or facing the consequences of his noncompliance. *Ogden v. San Juan Cty.*, 32 F.3d 452, 455 (10th Cir. 1994) (citing *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994)).

Department discriminated against him because of his gender thus allowing the children's mother to report her abuse allegations. The Olathe Police Department nonetheless investigated Ms. Gorski's allegations and prohibited plaintiff (as the father) from asserting his abuse allegations against Ms. Gorski.

Although the Amended Complaint does not explain this clearly, it appears that a Child in Need of Care ("CINC") case was initiated in the District Court of Johnson County, Kansas for plaintiff's two children. Also, Ms. Gorski filed her own lawsuit in Johnson County, Kansas, seeking an order of Protection from Abuse against plaintiff. Plaintiff accuses all five defendants of helping Ms. Gorski to contrive her false abuse allegations so that plaintiff would lose his parental rights to the two children during the legal proceedings in Johnson County, Kansas.

Plaintiff alleges that Safehome—a shelter for victims of domestic violence—placed his children at its shelter without his consent. Plaintiff contends that Safehome documented the false allegations of abuse against him without evidence and provided therapy to his children without his consent. Plaintiff also alleges that Safehome ignored his complaints that Ms. Gorski was abusing drugs, abusing the children, and engaging in prostitution. Plaintiff contends that Safehome covered up Ms. Gorski's illegal activities, instructed her to file false abuse allegations against plaintiff, and conspired with DCF and KVC Kansas to move Ms. Gorski to a new residence.

Plaintiff alleges that Layne Project—an organization who provides family services such as supervised parental visitation—discriminated against him because it forced him to pay for services but did not charge Ms. Gorski for services. Plaintiff also accuses Layne Project of documenting the false allegations of abuse against him while ignoring his complaints that Ms. Gorski was abusing drugs and the children and engaging in other criminal activity. Plaintiff

contends that Layne Project prohibited him from disciplining his children and prevented one of plaintiff's other children from visiting the two children that were involved in the CINC case.

Plaintiff alleges that KVC Kansas placed the children in the home of Ms. Gorski's friend—someone who is an unlicensed foster parent and who helped Ms. Gorski abuse drugs by supplying her pain killers. Plaintiff contends that KVC Kansas never spoke with him about the placement and never provided him the chance to object to it. Plaintiff also alleges that KVC Kansas documented Ms. Gorski's false abuse allegations while ignoring evidence that Ms. Gorski had contrived them. He also contends that KVC Kansas ignored his complaints that Ms. Gorski was abusing the children, abusing drugs, and involved with prostitution. Plaintiff accuses KVC Kansas of preventing him from visiting his children, ignoring his phone calls, withholding the case plan from him, lying to the Johnson County District Court about plaintiff's neglect of his children, and conspiring to terminate his parental rights.

Plaintiff's allegations against defendant Ashlyn Yarnell—the guardian ad litem appointed to represent the two children—claim that she failed to conduct a thorough investigation of Ms. Gorski's false abuse claims. Plaintiff contends that Ms. Yarnell spoke only to Ms. Gorski about the abuse allegations and ignored evidence showing that Ms. Gorski had contrived them. Plaintiff also alleges that Ms. Yarnell ignored his complaints about Ms. Gorski's unlawful activity, wrongfully charged plaintiff with neglect, prevented him from seeing his children, and expressed personal disapproval of plaintiff's religious beliefs. Plaintiff accuses Ms. Yarnell of providing false information to the Johnson County District Court about Ms. Gorski's visitation with the children and about his fitness as a parent. Also, he contends that Ms. Yarnell withheld information from the District Court about Ms. Gorski's false abuse allegations and prostitution.

Plaintiff alleges that defendants' actions wrongfully have deprived him of his children and have caused him humiliation and severe emotional distress. Plaintiff also contends that defendants' actions have allowed Ms. Gorski to expose his children to criminal activity and to subject them to physical abuse and emotional distress while in her care. Plaintiff seeks just one form of relief against defendants: money damages. He asks the court to award special, general, and punitive damages of $350,000 against each defendant. Doc. 70 at 24.

## II.     Legal Standard

### A.  Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction and, as such, must have a statutory basis to exercise jurisdiction." *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002) (citation omitted). Federal district courts have original jurisdiction of all civil actions arising under the constitution, laws, or treaties of the United States or where there is diversity of citizenship. 28 U.S.C. § 1331; 28 U.S.C. § 1332. "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974) (citation omitted). Since federal courts are courts of limited jurisdiction, there is a presumption against jurisdiction, and the party invoking federal jurisdiction bears the burden to prove it exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

Generally, a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) takes one of two forms: a facial attack or a factual attack. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). "First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true." *Id.*

(citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)) (internal citations omitted).

"Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and [to conduct] a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id.* at 1003 (citations omitted); *Los Alamos Study Grp. v. U.S. Dep't of Energy*, 692 F.3d 1057, 1063–64 (10th Cir. 2012); *see also Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1324–25 (10th Cir. 2002) (holding that a court must convert a motion to dismiss to a motion for summary judgment under Fed. R. Civ. P. 56 only when the jurisdictional question is intertwined with the case's merits).

**B. Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim**

Fed. R. Civ. P. 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although this Rule "does not require 'detailed factual allegations,'" it demands more than "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" which, as the Supreme Court explained, "'will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

 "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Under this standard, 'the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.'" *Carter v. United States*, 667 F. Supp. 2d 1259, 1262 (D. Kan. 2009) (quoting *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)).

And, although the Court must assume that the factual allegations in a complaint are true, it is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Carter*, 667 F. Supp. 2d at 1263 (quoting *Iqbal*, 556 U.S. at 678). "'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice'" to state a claim for relief. *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).

## III.    Analysis

As already recited, all five defendants have filed motions to dismiss. Plaintiff asserts claims against defendants under federal and state law. The court considers the federal claims that plaintiff asserts against each defendant in Part A below. Because the court concludes that none state a plausible claim for relief against any defendant, the court dismisses plaintiff's federal claims against all defendants. And, because the court dismisses all federal claims, the court considers in Part B, below, whether it should exercise supplemental jurisdiction over plaintiff's state law claims. The court declines to do so.

### A.  Federal Law Claims

#### 1.  Defendant Layne Project

Plaintiff asserts that Layne Project violated his constitutional rights under the First Amendment and the Fourteenth Amendment's Equal Protection Clause. Doc. 70 at 12. Layne

Project moves to dismiss plaintiff's claims against it under Fed. R. Civ. P. 12(b)(6) for failing to state claims for relief.[2]

### a. Fourteenth Amendment Equal Protection Claim

The Fourteenth Amendment's Equal Protection Clause provides that "[n]o *State* shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1 (emphasis added). "That language establishes an 'essential dichotomy' between governmental action, which is subject to scrutiny under the Fourteenth Amendment, and private conduct, which 'however discriminatory or wrongful,' is not subject to the Fourteenth Amendment's prohibitions." *Wasatch Equal. v. Alta Ski Lifts Co.*, 820 F.3d 381, 386 (10th Cir. 2016) (quoting *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1446 (10th Cir. 1995) (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 349 (1974))). *See also Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982) ("Because the [Fourteenth] Amendment is directed at the States, it can be violated only by conduct that may be fairly characterized as 'state action.'").

The Tenth Circuit instructs courts to "evaluate whether challenged conduct constitutes state action using a flexible approach." *Id.* (citing *Gallagher*, 49 F.3d at 1447). And, it applies four different tests to determine whether a private entity is subject to liability as a state actor: the nexus test, the symbiotic relationship test, the joint action test, and the public function test. *Gallagher*, 49 F.3d at 1447.

---

[2]     Layne Project also moves to strike plaintiff's Opposition to its Motion to Dismiss because plaintiff filed it one day past the local rule's deadline for filing responses to dispositive motions. *See* Doc. 94 at 2 (citing D. Kan. Rule 6.1(d)). Although plaintiff's pro se status does not excuse him from complying with the federal and local rules, the court nevertheless considers his untimely Opposition because nothing suggests bad faith and Layne Project never alleges prejudice caused by the one-day delay. Also, plaintiff's Opposition does not change the outcome here. Instead, plaintiff's Opposition only confirms the court's conclusion that his federal claims against Layne Protect fail to state plausible claims for relief. The court thus denies Layne Project's Motion to Strike. Doc. 94.

The nexus test requires a "sufficiently close nexus between the government and the challenged conduct" and, in most cases, renders a state liable for a private individual's conduct "only when [the State] has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Id.* at 1448 (citations and internal quotation marks omitted). The symbiotic relationship test asks whether the state "has so far insinuated itself into a position of interdependence with a private party that it must be recognized as a joint participant in the challenged activity." *Id.* at 1451 (citations and internal quotation marks omitted). The joint action test requires courts to "examine whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." *Id.* at 1453 (citations omitted). Finally, the public function test asks whether the challenged action is "a function traditionally exclusively reserved to the State." *Id.* at 1456 (citations and internal quotation marks omitted). No matter the test applied, "'the conduct allegedly causing the deprivation of a federal right' must be 'fairly attributable to the State.'" *Id.* at 1447 (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).

Here, no matter which test is applied and even assuming the facts alleged in plaintiff's Amended Complaint are true, his revised pleading still alleges no facts sufficient to state a plausible claim against Layne Project for conduct that was "fairly attributable to the state." Plaintiff makes the conclusory allegation that "Layne Project worked in conjunction with Johnson County Court, and was given authority by the court to act as a State actor." Doc. 70 at 15. Plaintiff also asserts that "Layne Project was a 'nexus' with the Court and made policies against the Plaintiff that violated Plaintiff's Civil Rights." *Id.* But, plaintiff provides no facts anywhere in his Amended Complaint to support these conclusory statements. Plaintiff's allegations thus are insufficient to state a plausible claim against Layne Project. *See Scott v.*

*Hern*, 216 F.3d 897, 907 (10th Cir. 2000) (explaining that a plaintiff attempting to assert state action by alleging a conspiracy between private defendants and "state officials" must allege more than "mere conclusory allegations with no supporting factual averments [which] are insufficient; the pleadings must specifically present facts tending to show agreement and concerted action" (citation omitted)); *see also Lindsey v. Thomson*, 275 F. App'x 744, 746 (10th Cir. 2007) (holding that conclusory allegations of conspiracy are insufficient to subject a private party to liability; instead the "allegations of conspiracy must provide some factual basis to support the existence of any conspiracy to violate the Plaintiff's rights" (quoting *Crabtree ex rel. Crabtree v. Muchmore*, 904 F.2d 1475, 1481 (10th Cir. 1990))).

And, even if plaintiff had alleged sufficiently that Layne Project was a state actor, the Amended Complaint still fails to state a plausible claim for violation of the Fourteenth Amendment's Equal Protection Clause. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *Citizen Ctr. v. Gessler*, 770 F.3d 900, 917–18 (10th Cir. 2014) (quoting *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)). Thus, to assert an equal protection claim, plaintiff must allege that Layne Project treated him differently than other similar similarly-situated individuals. *See id.* (holding that plaintiffs' equal protection claim failed to state a valid claim under Rule 12(b)(6) because plaintiff never alleged differing treatment for similarly-situated individuals).

Here, plaintiff asserts that Layne Project discriminated against him by failing to document his complaints against Ms. Gorski and forcing him to pay for services while not charging Ms. Gorski. But, plaintiff fails to allege facts showing that Layne Project treated him

differently than any other similarly-situated parents who used Layne Project's family services. Without such allegations, plaintiff can state no plausible claim against Layne Project for violating the Fourteenth Amendment's Equal Protection Clause.

### b. First Amendment Claim

Plaintiff also alleges that Layne Project violated his rights under the First Amendment to the United States Constitution. The First Amendment prohibits Congress from making any "law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I.

Plaintiff's Amended Complaint fails to identify clearly how Layne Project purportedly violated his First Amendment rights. Layne Project's motion presumes that plaintiff asserts a free exercise claim because he alleges that Layne Project refused to allow him to discipline his children, thereby violating plaintiff's religious beliefs. Doc. 78 at 4. Liberally construing plaintiff's Amended Complaint to assert such a First Amendment violation, Layne Project argues that plaintiff still fails to state a plausible claim because he alleges no state action. The court agrees.

A First Amendment claim requires state action. *See Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 95 F.3d 959, 968 (10th Cir. 1996) ("The First Amendment only protects . . . regulation by the government."); *see also How v. City of Baxter Springs, Kan.*, 217 F. App'x 787, 791 n.3 (10th Cir. 2007) ("The First Amendment . . . requires state action[,]" so to hold a private individual personally liable, the court "must determine whether [the private individual's] actions may 'be fairly attributed to the State.'" (first citing *Hudgens v. NLRB*, 424 U.S. 507, 513 (1976); then quoting *Lugar*, 457 U.S. at 937). For the same reasons discussed above, plaintiff's

Amended Complaint asserts no facts sufficient to infer that Layne Project's actions are "fairly attributable to the State" such that it can be held liable for violating the First Amendment. Plaintiff thus fails to state a plausible claim against Layne Project under the First Amendment.

The court thus dismisses plaintiff's federal claims against Layne Project under Rule 12(b)(6) because plaintiff's Amended Complaint fails to state a plausible claim for relief under federal law.

### 2. Defendant City of Olathe

Plaintiff brings federal claims against Olathe under 42 U.S.C. § 1983, asserting violations of the Fourth and Sixth Amendments and the Fourteenth Amendment's Equal Protection and Due Process Clauses. Doc. 70 at 3. Olathe moves to dismiss under Fed. R. Civ. P. 12(b)(6), asserting that plaintiff's federal claims fail to state a claim for relief.

Section 1983 prohibits "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by any person acting under color of law. 42 U.S.C. § 1983. The Supreme Court has held that "a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Social Servs.*, 436 U.S. 690, 691 (1978). Instead, a plaintiff may sue municipalities only for their own unconstitutional policies or customs—not for acts by their employees. *Id.* at 694–95.

Thus, "[a] plaintiff suing a municipality under section 1983 for the acts of one of its employees must prove: (1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." *Myers v. Okla. Cty. Bd. of Cty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998) (citing *Monell*, 436 U.S. at 694). The Tenth Circuit has explained that "[a]n unconstitutional

deprivation is caused by a municipal 'policy' if it results from decisions of a duly constituted legislative body or an official whose acts may fairly be said to be those of the municipality itself." *Carney v. City & Cty. of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008) (citation omitted). And, the Circuit has defined a "custom" as "an act that, although not formally approved by an appropriate decision maker, has such widespread practice as to have the force of law." *Id.* (citation omitted). Such a custom is marked by "continuing, persistent and widespread" actions by municipal employees. *Id.* (quoting *Gates v. Unified Sch. Dist. No. 449*, 996 F.2d 1035, 1041 (10th Cir. 1993)).

In its earlier Memorandum and Order, the court observed that plaintiff's proposed Amended Complaint failed to allege the existence of any custom or policy adopted by a municipal policymaker, or any facts supporting an inference that one exists. Doc. 65 at 8. The court explained that "[t]his is an essential requirement for asserting a § 1983 claim against a municipality, and, without such allegations, plaintiff fails to state a claim for relief against Olathe." *Id.* The court granted plaintiff leave to file an Amended Complaint, directing him to cure the deficiencies identified. *Id.* at 13–14. Plaintiff's Amended Complaint now asserts conclusory allegations about Olathe's purported customs and practices. It otherwise fails to heed to the court's directive. Plaintiff still has pleaded no *facts* showing that the alleged unconstitutional conduct occurred under a municipal policy or custom sufficient to subject Olathe to liability under § 1983.

Plaintiff's assertions of a municipal policy include the following. First, plaintiff alleges that Olathe's "customs and practice for handling domestic violence issues did not give the male Plaintiff Equal Protection of the law as it was given to a female citizen." Doc. 70 at 3. Plaintiff also asserts:

14

City of Olathe customs and practices for domestic violence abuse violated Plaintiff Shophar's constitutional rights, by refusing the Plaintiff claims against the woman subject, however Olathe Police interviewed the Plaintiff on 3 separate occasions and threatened the Plaintiff with jail time, if he did not produce evidence that the Plaintiff did not "punch his child."

*Id.* at 7. Last, plaintiff alleges:

Olathe Police Department violated the Constitution and Federal law 42 U.S.C. § 1983 through their policy by withholding the Plaintiff from his children without "due process" based on allegations and not a "trial by court" with an adjudication "beyond a reasonable doubt" that the Plaintiff committed a violent act against a woman and children. Olathe Police Department policy violated the "color of the law" by given rights to the female, and allowing the female to make a report, however, refusing the male the rights to his children, and denied the male the same equal rights under the law to make a report against the mother.

*Id.* at 8. In sum, plaintiff complains about how the Olathe Police Department investigated the abuse allegations asserted by Ms. Gorski. But he fails to allege any *facts* to infer that a municipal policy or custom provided the requisite moving force behind the alleged constitutional deprivations plaintiff claims he sustained. Instead, plaintiff just makes conclusory allegations about municipal customs, which are insufficient to state a claim. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (explaining that a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based"). Absent sufficient factual allegations, plaintiff fails to state a § 1983 claim against Olathe. *See*, *e.g.*, *Glaser v. City and Cty. of Denver*, 557 F. App'x 689, 702, 703 (10th Cir. 2014) (affirming Rule 12(b)(6) dismissal of § 1983 claims because plaintiff's allegations that a municipality implemented an unconstitutional policy and failed to train employees properly were conclusory); *McCormick v. City of McAlester*, 525 F. App'x 885, 888 (10th Cir. 2013) (holding that plaintiff's allegations of "several instances of alleged free-speech retaliation by the police department" failed to state a § 1983 claim because he identified no "municipal policy or custom that was the moving force behind [the] alleged constitutional deprivation"); *Dixon v. City of Wichita, Kan.*,

No. 13-1033-RDR, 2013 WL 2422741, at *3 (D. Kan. June 3, 2013) (holding that plaintiff's §

1983 claims failed to state a claim because plaintiff alleged only conclusory allegations of

unconstitutional policies without any factual support such as "prior incidents involving similar

conduct").

Plaintiff's Amended Complaint fails to state a claim against Olathe under § 1983.

Plaintiff's Amended Complaint also fails to assert facts to allege claims for constitutional

violations. The court addresses each purported constitutional violation, in turn.

### a. Fourth Amendment

Plaintiff alleges that Olathe violated his Fourth Amendment rights because Olathe Police

Department officers refused to disclose his children's location to him. Doc. 70 at 4. Plaintiff

asserts that the police lacked "probable cause to withhold the children from [him], violating

[p]laintiff's Fourth Amendment rights to his blood born children." *Id.* The Fourth Amendment

protects "[t]he right of the people to be secure in their persons, houses, papers, and effects,

against unreasonable searches and seizures." U.S. Const. amend. IV.

Olathe asserts that plaintiff cannot state a claim under the Fourth Amendment based on

officers' refusal to disclose his kids' location. Indeed, plaintiff cites no law holding that these

facts could constitute a "seizure" capable of supporting a viable Fourth Amendment claim. And,

the court's own research has found no law to support this claim. "A seizure occurs for Fourth

Amendment purposes when a reasonable person would have believed that he was not free to

leave." *Jones v. Hunt*, 410 F.3d 1221, 1225–26 (10th Cir. 2005). Here, plaintiff never alleges

that Olathe seized him. And, generally, "Fourth Amendment rights are personal rights which . . .

may not be vicariously asserted." *Rakas v. Illinois*, 439 U.S. 128, 133–34 (1978). Nevertheless,

the Tenth Circuit has noted that in some circumstances, "a parent has Fourth Amendment

standing to challenge a seizure involving a minor child." *J.B. v. Washington Cty.*, 127 F.3d 919, 928 (10th Cir. 1997). *But see Hollingsworth v. Hill*, 110 F.3d 733, 739 (10th Cir. 1997) (holding that the removal of plaintiff's children did not violate plaintiff's Fourth Amendment rights and that plaintiff could not assert a Fourth Amendment claim on behalf of her children because her complaint did not include the children as plaintiffs).

But, even if plaintiff has standing to assert his own Fourth Amendment claim and even if a seizure occurred under the facts alleged here, plaintiff fails to allege facts supporting an *unreasonable* seizure sufficient to state a claim under the Fourth Amendment. A reasonable seizure requires "[w]ith limited circumstances . . . either a warrant or probable cause." *Jones*, 410 F.3d at 1227 (citing *Camara v. Mun. Court*, 387 U.S. 523, 528–29 (1967)); *see also Illinois v. McArthur*, 531 U.S. 326, 330 (2001) ("[I]n the ordinary case, seizures of personal property are unreasonable within the meaning of the Fourth Amendment, without more, unless . . . accomplished pursuant to a judicial warrant, issued by a neutral magistrate after finding probable cause." (citation and internal quotation marks omitted)).

Here, an August 12, 2015 order issued by a Kansas state court judge prohibited officers from disclosing the children's location to plaintiff. *See* Docs. 85-2, 85-3, 85-4 (Orders issued by the District Court of Johnson County, Kansas, ordering that the children reside with Ms. Gorski and that Ms. Gorski's address and telephone number remain confidential for protection).[3] Under these facts, plaintiff's allegations that the officers refused to tell him the children's location do not assert an "unreasonable seizure" sufficient to state a Fourth Amendment claim. *See*, *e.g.*, *Hunt v. Green*, 376 F. Supp. 2d 1043, 1056 (D.N.M. 2005) (holding that no unlawful seizure

---

[3]    The court may take judicial notice of these state court orders when deciding the motion to dismiss. *See Pace v. Swerdlow*, 519 F.3d 1067, 1072 (10th Cir. 2008) (explaining that courts may take judicial notice of facts that are a matter of public record and of state court documents, and courts properly may consider those facts when deciding a motion to dismiss); *see also Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).

occurred when children were removed from grandmother's physical custody because a state family court had issued an order giving a state agency legal custody of the children). Plaintiff thus fails to state a plausible claim against Olathe for Fourth Amendment violations.

### b. Sixth Amendment

Plaintiff's Second Amended Complaint asserts a Sixth Amendment claim against Olathe, but contains no facts explaining how Olathe violated that constitutional provision. In his response to Olathe's Motion to Dismiss, plaintiff clarifies that he brings his Sixth Amendment claim under the "confrontation clause which guarantees the opportunity to confront the [p]laintiff's accuser." Doc. 92 at 7. The Sixth Amendment's confrontation clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI.

Plaintiff's Amended Complaint never alleges any facts showing that Olathe prosecuted him for any criminal violations or prevented him from confronting his accuser during such proceedings. To the contrary, plaintiff's Amended Complaint describes the domestic civil case initiated by Ms. Gorski. *See generally* Doc. 70; *see also* Docs. 85-1, 85-2, 85-3, 85-4. Plaintiff's Amended Complaint chronicles certain history of that litigation, describes how counsel represented plaintiff in that matter, and even suggests that plaintiff had an opportunity to confront his accuser—Ms. Gorski—in that proceeding. For purposes of Olathe's motion, plaintiff alleges no facts showing that Olathe precluded him from confronting his accuser in any "criminal prosecution" or how even it did so in the civil lawsuit he references. Plaintiff's Amended Complaint thus fails to state a claim under the Sixth Amendment.

### c. Fourteenth Amendment

Plaintiff's Amended Complaint asserts claims against Olathe for violating his Fourteenth Amendment rights under the Due Process and Equal Protection Clauses. Doc. 70 at 3. In plaintiff's response to Olathe's Motion to Dismiss, he addresses only his due process claim. As a consequence, Olathe argues that plaintiff has abandoned his equal protection claims. *See Hinsdale v. City of Liberal, Kan.*, 19 F. App'x 749, 768–69 (10th Cir. 2001) (affirming district court's dismissal of plaintiff's equal protection claim after it concluded that plaintiff had abandoned the claim because he had not addressed it in his memorandum opposing summary judgment).

Even if plaintiff has not abandoned his equal protection claim, the Amended Complaint still fails to allege facts to state a plausible claim against Olathe. An equal protection claim requires plaintiff to allege facts "demonstrat[ing] that the defendant's actions had a discriminatory effect and were motivated by a discriminatory purpose." *United States v. Armstrong*, 517 U.S. 456, 465 (1996); *see also Lindsey v. Thomson*, 275 F. App'x 744, 746 (10th Cir. 2007) (affirming district court's dismissal of plaintiff's equal protection claim under Rule 12(b)(6) because he failed to allege that he was " a member of a protected class (other than a reference to a disability) or that any of the Defendants discriminated against him on that basis").

Here, plaintiff alleges that the Olathe Police Department discriminated against him by ignoring his complaints about Ms. Gorski while investigating Ms. Gorski's abuse allegations against him. But, plaintiff's Second Amended Complaint also describes various communications he had with the Olathe Police Department—including complaints that he made to them about Ms. Gorski's purported drug use and child endangerment. Plaintiff makes the conclusory allegation that the Olathe Police Department allows women to make false abuse allegations

without protecting men, but he provides no facts that could support this conclusion, such as facts showing that Olathe treated plaintiff differently than other similarly-situated individuals. Instead, as Olathe argues, plaintiff bases his equal protection allegations on his disagreement with how Olathe's police officers handled his complaints. The Amended Complaint never alleges facts supporting an inference that Olathe acted with a discriminatory animus or that its conduct was motivated by a discriminatory intent. Citizens have every right to disagree with a governmental policy, or how it was executed in a particular instance. But such a disagreement is not actionable without facts capable of establishing a discriminatory animus. Plaintiff fails to state an equal protection claim against Olathe.

Plaintiff also fails to state a plausible due process claim against Olathe. The Fourteenth Amendment protects individuals against deprivations of life, liberty, and property without due process of law. U.S. Const. amend. XIV, § 1. Here, plaintiff's allegations are particularly hard to follow, but it appears that he is alleging that Olathe violated the Due Process Clause because it prevented plaintiff from seeing his children, investigated Ms. Gorski's abuse allegations, and enforced a Protective Order entered by the Johnson County District Court. Plaintiff never identifies, though, what liberty or property interest Olathe purportedly deprived him of without due process. But liberally construing the Amended Complaint, the court assumes plaintiff alleges that Olathe deprived him of his liberty interest in his family relationship with his two children. *See Troxel v. Granville*, 530 U.S. 57, 65 (2000) (recognizing that "the interest of parents in the care, custody, and control of their children . . . is perhaps the oldest of the fundamental liberty interests recognized by this Court"); *see also Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1245 (10th Cir. 2003) (recognizing that "termination of parental rights

impinges upon a liberty interest of which a citizen may not be deprived without due process of law" (citing *Santosky v. Kramer*, 455 U.S. 745, 753–54 (1982)).

Olathe argues that the Amended Complaint fails to assert facts showing that plaintiff had an interest protected by due process because, at all times relevant to plaintiff's allegations against Olathe, the Johnson County District Court already had ordered that plaintiff had no right to custody of the children. *See* Doc. 85-2 at 3. Also, the Kansas District Court had placed the children in Ms. Gorski's custody and ordered that her address remain confidential for her protection. *Id.* at 2. Plaintiff thus had no protected liberty interest at any time relevant to his claims against Olathe. *See, e.g.*, *Shipway v. Jerlinski*, No. 5:11cv00112, 2012 WL 1622395, at *9 (W.D. Va. Apr. 13, 2012) (holding that the removal of a child from the grandmother's home to investigate abuse allegations did not violate the grandmother's constitutional rights because she had "no liberty interest in the custody, care and management of the removed child" and "equally no liberty interest or right . . . to remain free of child abuse investigations" (first citing *Troxel v. Granville*, 530 U.S. 57, 65–66 (2000); then citing *Croft v. Westmoreland Cty. Children and Youth Servs.*, 103 F.3d 1123, 1125 (3d Cir. 1997))).

Plaintiff's Amended Complaint makes no allegation that Olathe issued the custody orders without due process, much less that it had the authority to do so. Instead, it was the Johnson County, Kansas District Court who issued the relevant custody orders. Under these facts, Olathe never deprived plaintiff of a protected interest, and his due process claim thus fails to state a claim for relief.

As explained above, none of plaintiff's federal claims assert a plausible claim for relief against Olathe. Consequently, the court dismisses the federal claims that plaintiff's Amended Complaint asserts against Olathe under Rule 12(b)(6).

### 3. Defendant Ashlyn Yarnell

Plaintiff asserts federal claims against Ms. Yarnell under 42 U.S.C. §§ 1983 and 1985. These claims allege violations of the Fourteenth Amendment's Due Process and Equal Protection Clauses and the First Amendment's protection of religious freedom.

Ms. Yarnell invokes several arguments to dismiss plaintiff's Complaint, including that she is immune from liability as a court-appointed guardian ad litem. The court explained in its earlier Memorandum and Order that a guardian ad litem is entitled to quasi-judicial immunity for acts "within the core duties of a [guardian ad litem] in assisting the court—that is, in performing a 'function [ ] closely associated with the judicial process.'" Doc. 65 at 5 (quoting *Dahl v. Charles F. Dahl, M.D., P.C. Defined Ben. Pension Tr.*, 744 F.3d 623, 630 (10th Cir. 2014) (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985))). A guardian ad litem is not immune, however, "for acts taken in the 'clear absence of all jurisdiction.'" *Id.* (quoting *Stump v. Sparkman*, 435 U.S. 349, 357 (1978)). But a given act does not exceed a guardian ad litem's jurisdiction just because it is "wrongful, even unlawful." *Id.* at 630–31. Immunity still applies when an act "was [taken] in error, was done maliciously, or was in excess of . . . authority." *Id.* at 631 (quoting *Stump*, 435 U.S. at 356–57).

Even though the court's earlier Order explained how the law governing immunity for a court-appointed guardian ad litem works, plaintiff's Amended Complaint still fails to assert claims against Ms. Yarnell to deprive her of immunity. Instead, the Amended Complaint asserts claims against Ms. Yarnell only for acts she performed in her capacity as a court-appointed guardian ad litem and in furtherance of the judicial process. Plaintiff's Amended Complaint merely adds conclusory gloss that Ms. Yarnell "ma[de] a ruling outside of her jurisdiction that Plaintiff was a threat to his children by limiting Plaintiff's visit[s] with his children based on

claims that the Plaintiff 'follows the Bible'" and that plaintiff "would act out of her jurisdiction and refuse to allow the Plaintiff to see his children, unless he used [a particular agency]." Doc. 70 at 20–21, 23. But, plaintiff asserts no facts to support an inference that Ms. Yarnell committed these acts in the absence of jurisdiction. Instead, all of plaintiff's allegations against Ms. Yarnell involve acts she committed as part of her appointment as a guardian ad litem for the children. Plaintiff's allegations that Ms. Yarnell was biased against plaintiff or that she made false statements about him in court also cannot suffice to deprive her of immunity, even if these acts were wrongful or unlawful. *See Dahl*, 744 F.3d at 631. Ms. Yarnell thus is immune from liability against the claims asserted in plaintiff's Amended Complaint.

Even if plaintiff's allegations sufficiently asserted facts to support an inference that Ms. Yarnell acted without jurisdiction so that immunity would not apply, plaintiff's Amended Complaint still fails to state a claim against Ms. Yarnell under both § 1983 or § 1985. Plaintiff alleges no facts to infer that Ms. Yarnell is a state actor such that she can be held liable for violating § 1983. *See Meeker v. Kercher*, 782 F.2d 153, 155 (10th Cir. 1986) (holding that a guardian ad litem is not a state actor but instead "is a fiduciary who must act in the minor's best interest" and thus "owes his or her undivided loyalty to the minor, not the state" (citations and internal quotation marks omitted)); *see also Fuller v. Davis*, 594 F. App'x 935, 939 (10th Cir. 2014) (affirming district court's dismissal of § 1983 claim asserted against a guardian ad litem because he was "not a state actor proceeding under color of state law for purposes of § 1983"). Here, plaintiff has included allegations in his Amended Complaint that accuse Ms. Yarnell of "conspir[ing] to force the Plaintiff to use an affiliate Agency so that Barb Sharp could continue to write negative reports against the Plaintiff, to keep him on supervised visits, to get an 'adjudication' by a court that the father was an 'unfit' parent." Doc. 70 at 23. He also alleges

that "Ms. Yarnell conspired with the State of Kansas Erica Miller, DCF and KVC to submit continual false, and negative reports against the father, violating due process of the law." *Id.* But these allegations are just conclusions, and the Amended Complaint alleges no facts to support an inference that Ms. Yarnell's actions are ones fairly attributable to the State. Plaintiff thus fails to state a viable § 1983 claim against Ms. Yarnell. *See Beedle v. Wilson*, 422 F.3d 1059, 1073 (10th Cir. 2005) (affirming Rule 12(b)(6) dismissal of conclusory allegations of conspiracy with state actors because they were insufficient to state a § 1983 claim against a private defendant); *see also Fuller*, 594 F. App'x at 939 (affirming dismissal of a § 1983 claim against a guardian ad litem because plaintiff's "conjecture that [the guardian ad litem] conspired with other defendants to create an unenforceable no-contact order is too speculative and conclusory to suffice" to state a plausible claim).

Plaintiff also fails to state a plausible § 1985 claim against Ms. Yarnell. Section 1985 prohibits persons from conspiring "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). A conspiracy claim under § 1985 "requires at least a combination of two or more persons acting in concert and an allegation of a meeting of the minds, an agreement among the defendants, or a general conspiratorial objective." *Brooks v. Gaenzle*, 614 F.3d 1213, 1227–28 (10th Cir. 2010) (citations omitted). Mere conclusory allegations of conspiracy cannot state a valid claim under § 1985. *Hogan v. Winder*, 762 F.3d 1096, 1114 (10th Cir. 2014).

As described above, plaintiff's Amended Complaint just asserts conclusory allegations of a conspiracy. Such allegations fail to state a plausible claim under § 1985. The Amended Complaint pleads no facts demonstrating a meeting of the minds, an agreement among

defendants, or a general conspiratorial objective.  Plaintiff thus fails to state a plausible § 1985 claim against Ms. Yarnell.

For all these reasons, the court concludes that plaintiff's Amended Complaints fails to state any federal claim for relief against Ms. Yarnell.  The court thus grants Ms. Yarnell's Motion to Dismiss the federal claims asserted against her.

### 4.  Defendant Safehome

Plaintiff asserts that Safehome violated his constitutional rights under the Fourth, Sixth, and Fourteenth Amendment.  Doc. 70 at 9.  Plaintiff also asserts that Safehome violated 18 U.S.C. § 1028.  *Id.*  Safehome contends that none of these claims state a plausible claim for relief.  The court agrees.

### a.  Constitutional Claims

To assert viable constitutional claims against Safehome, plaintiff must allege state action. *See*, *e.g.*, *Lugar*, 457 U.S. at 927 ("Because the [Fourteenth] Amendment is directed at the States, it can be violated only by conduct that may be fairly characterized as 'state action.'"); *United States v. Poe*, 556 F.3d 1113, 1123 (10th Cir. 2009) (explaining that the Fourth Amendment only "guards against unreasonable searches and seizures by state actors" not private individuals unless they are acting as or in concert with the government); *Zapata v. Pub. Defenders Office*, 252 F. App'x 237, 239 (10th Cir. 2007) (affirming dismissal of plaintiff's claims that a private attorney violated his Sixth Amendment and due process rights because the attorney was not acting under color of state law).

The Amended Complaint never alleges that Safehome is a state actor.  Also, it alleges no facts allowing an inference that Safehome's actions are fairly attributable to the state so that it

can be held liable, as a private entity, for violating plaintiff's rights under the United States Constitution.

Plaintiff's Amended Complaint also fails to state viable claims against Safehome under the Fourth, Sixth, and Fourteenth Amendment for the same reasons already discussed. Plaintiff alleges that Safehome placed his children in a shelter without his consent and assisted Ms. Gorski with finding a residence. Doc. 70 at 9, 10. These facts allege no unreasonable search or seizure violating the Fourth Amendment. *See supra* Part III.A.2.a. The Amended Complaint also alleges no facts explaining how Safehome violated plaintiff's Sixth Amendment rights. In his Opposition, plaintiff contends that Safehome denied plaintiff the right to confront his accuser. Doc. 97 at 4. But, the Amended Complaint fails to allege facts supporting an inference that Safehome precluded plaintiff from confronting his accuser in a criminal prosecution, much less the relevant civil proceedings here. *See supra* Part III.A.2.b. Finally, plaintiff fails to allege facts to infer that Safehome violated plaintiff's rights under the Fourteenth Amendment's Equal Protection or Due Process Clauses. *See supra* Part III.A.2.c.

### b. 18 U.S.C. § 1028

Plaintiff also fails to state a plausible claim for relief under 18 U.S.C. § 1028. This statute criminalizes fraud in connection with identification documents. This criminal statute provides no private right of action. *See Obianyo v. Tennessee*, 518 F. App'x 71, 72 (3d Cir. 2013) (holding that § 1028 "provide[s] no private right of action for use by a [private] litigant"); *see also Sump v. Schaulis*, No. 07-4014-RDR, 2007 WL 1054277, at *1 (D. Kan. Apr. 9, 2007) (holding that plaintiff, as a private citizen, could not bring an action under § 1028). So, plaintiff fails to state a plausible claim for relief against Safehome under this statute.

### 5.  Defendant KVC Kansas

Plaintiff brings claims against KVC Kansas under 42 U.S.C. § 1985, alleging violations of the Fourteenth Amendment's Equal Protection and Due Process Clauses.  Doc. 70 at 15. Plaintiff's claims against KVC Kansas fail to state a plausible claim for relief for two reasons.

First, the Amended Complaint fails to allege facts sufficient to state a § 1985 claim against KVC Kansas.  As described in Part III.A.3. above, a conspiracy claim under § 1985 "requires at least a combination of two or more persons acting in concert and an allegation of a meeting of the minds, an agreement among the defendants, or a general conspiratorial objective." *Brooks v. Gaenzle*, 614 F.3d 1213, 1227–28 (10th Cir. 2010) (citations omitted).  And, mere conclusory allegations of conspiracy are insufficient to state a valid claim under § 1985.  *Hogan v. Winder*, 762 F.3d 1096, 1114 (10th Cir. 2014).  Plaintiff's Amended Complaint just makes conclusory allegations that KVC Kansas conspired against plaintiff to terminate his parental rights and place plaintiff's children with Ms. Gorski.  *See, e.g.*, Doc. 70 at 18, 19.  But, the pleading alleges no facts capable of supporting this conclusion.  More specifically, the pleading fails to allege facts demonstrating a meeting of the minds, an agreement among defendants, or a general conspiratorial objective sufficient to state a § 1985 claim.  Plaintiff's conclusory allegations simply fail to state a plausible claim against KVC Kansas under § 1985.

Second, plaintiff fails to allege facts sufficient to state a claim against KVC Kansas for violating the Fourteenth Amendment.  The Amended Complaint makes the conclusory allegation that KVC Kansas "worked in conjunction with Johnson County Court, and was given authority by the court to act as a State Actor."  Doc. 70 at 19.  But, the Amended Complaint contains no facts to support this conclusory assertion.  It also asserts no facts supporting an inference that KVC Kansas' actions are fairly attributable to the state such that it can be held liable for

violating the Fourteenth Amendment. *See*, *e.g.*, *Lugar*, 457 U.S. at 927 ("Because the [Fourteenth] Amendment is directed at the States, it can be violated only by conduct that may be fairly characterized as 'state action.'"). For both of these reasons, plaintiff's claims against KVC Kansas fail to state a plausible claim for relief.

### B. State Law Claims

Plaintiff's Second Amended Complaint also asserts state law claims against the four defendants. Namely, plaintiff brings a claim under Kan. Stat. Ann. § 38-141 against Olathe, Layne Project, KVC Kansas, and Ashlyn Yarnell. Doc. 70 at 3, 12, 15, 20. Plaintiff also asserts that Layne Project violated Kan. Stat. Ann. § 38-223(e). Doc. 70 at 12. Defendants argue that the court lacks subject matter jurisdiction over these claims because plaintiff's Amended Complaint only invokes jurisdiction under 28 U.S.C. § 1331. Section 1331 confers federal courts with "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Because plaintiff's state law claims arise under Kansas statutes—not federal laws—section 1331 confers no subject matter jurisdiction for them.

Nevertheless, the court could exercise supplemental jurisdiction over plaintiff's state law claims under 28 U.S.C. § 1367. Although plaintiff never pleads supplemental jurisdiction under § 1367 specifically, the court liberally construes his Amended Complaint as doing so. But, the court also may decline to exercise supplemental jurisdiction under § 1367 if it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

The decision whether to exercise supplemental jurisdiction is committed to a district court's sound discretion. *Exum v. United States Olympic Comm.*, 389 F.3d 1130, 1138–39 (10th Cir. 2004). Section 1367 "reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every

stage of the litigation, the values of judicial economy, convenience, fairness and comity.'" *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172–73 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ.*, 484 U.S. at 350 n.7; *see also Tonkovich v. Kan. Bd. of Regents*, 254 F.3d 941, 945 (10th Cir. 2001) (holding that where pretrial proceedings and discovery have not commenced in earnest, "considerations of judicial economy, convenience, and fairness do not favor retaining jurisdiction" (citations and internal quotation marks omitted)). Also, "[n]otions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary." *Thatcher Enters. v. Cache Cty. Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990).

Here, the court has dismissed every claim against defendants which it had original jurisdiction to decide. No pretrial proceedings or discovery have taken place yet, and this case is not unusual. The court thus exercises its discretion and declines to exercise supplemental jurisdiction over plaintiff's state law claims.

## IV.    Conclusion

For all these reasons, plaintiff's Amended Complaint fails to state plausible claims under federal law against each of the five defendants. The court notes that it already has afforded plaintiff the opportunity to amend his complaint, but yet his Amended Complaint still fails to plead "factual content" that allows the court to "draw the reasonable inference that the defendant[s] [are] liable" for plaintiff's asserted federal claims. *Iqbal*, 556 U.S. at 678.

When the court granted plaintiff leave to file an amended pleading, the court cautioned him that he had "one final opportunity to file an Amended Complaint—one that addresses all of the concerns raised by the court in this Order." Doc. 65 at 13. The court also explained to plaintiff that his amended pleading "must plead *facts*—and not just conclusions—to state plausible claims and cure the deficiencies identified [in the court's Order]." *Id.* Despite this admonition, plaintiff's Amended Complaint failed to cure the deficiencies the court had identified.

Because plaintiff fails to plead facts to state plausible federal claims against the five defendants, the court grants defendants' motions to dismiss plaintiff's federal claims. The court declines to exercise supplemental jurisdiction over plaintiff's state law claims.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants Layne Project, Ashlyn Yarnell, City of Olathe, Safe Home of Kansas, and KVC Kansas' Motions to Dismiss (Docs. 77, 79, 84, 86, 88) are granted.

**IT IS FURTHER ORDERED THAT** defendant Layne Project's Motion to Strike (Doc. 94) is denied.

**IT IS SO ORDERED.**

**Dated this 16th day of June 2017, at Topeka, Kansas.**

**s/ Daniel D. Crabtree_____**
**Daniel D. Crabtree**
**United States District Judge**